**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 26 2013, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JANA K. STRAIN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MATTHEW E. DUMAS**
Hostetter & O'Hara
Brownsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLARENDA LOVE, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 32A05-1207-DR-373 |
| | ) | |
| BRUCE LOVE, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Robert J. Lowe, Judge
Cause No. 32D05-1006-DR-88

**June 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Clarenda Love ("Clarenda") appeals from the trial court's property distribution order following the dissolution of her marriage to Bruce Love ("Bruce").

We reverse and remand.

## ISSUE

Whether the trial court abused its discretion in ordering an unequal distribution of marital property.

## FACTS AND PROCEDURAL HISTORY

Clarenda and Bruce were married on September 23, 1979. There are two children born of the marriage, both of whom were emancipated before the dissolution of Clarenda and Bruce's marriage.

After the couple's first child was born, Clarenda earned money for the family by babysitting and then later by operating a housecleaning business with a friend. When the children were young, Clarenda exercised primary responsibility for taking care of the home and the children while working part-time. During this period, Bruce worked full-time outside the home. The family's bills were paid from a joint account.

At some point in the 1990's, Clarenda started taking prerequisites for pharmacy school. In approximately 2000, Clarenda entered Purdue University to take core pharmacy classes. During this time, Clarenda also worked for Kroger and cleaned houses. Despite working part time and engaging in co-op programs during school, Clarenda incurred student loan debt valued at $54,646.84 at the time of separation. She

graduated from Purdue in 2005, passed the pharmacy boards in August 2007, and then was hired as a full-time pharmacist at Kroger.

Bruce also went to college during the marriage, but he did not graduate. His college tuition was reimbursed by his employer.

Bruce petitioned for dissolution of the marriage on June 22, 2010, and, although the parties continued to reside in the marital residence until Bruce moved out in December of 2011, the separation date is June 22, 2010 (the date the petition for dissolution was filed).

At the time of the final dissolution hearing on June 19, 2012, Clarenda had been employed full-time for five years as a pharmacist for Kroger, and Bruce had been employed as an engineer at SMC Corporation of America ("SMC") for a number of years. Clarenda had accumulated a retirement account through Kroger with a balance of $21,617.71 on the date of separation, and Bruce had accumulated a retirement account through SMC with a balance of $65,935.37. Clarenda's annual salary was $106,000 on the date of separation, and Bruce's annual salary was $52,000.

During the marriage, the parties acquired two residential properties: the marital residence in Avon, Indiana (the "marital residence") and a rental property in Lafayette, Indiana (the "rental property), which they rented to Purdue students. For most of the period that the parties owned the rental property, Bruce was responsible for maintenance and Clarenda was responsible for administrative issues (finding renters, executing leases, collecting rent, etc.). At the time of the separation, Clarenda stopped managing the rental

property, and Bruce took over those duties. When Bruce took over administrative duties, the cash flow from the rental property dwindled.

During the marriage, the parties jointly owned a money market account ("Account 2744") that, until April 14, 2009, held approximately $27,000. On April 14, 2009, Bruce, in anticipation of filing for dissolution of the marriage, withdrew half the money market balance ($13,500) and moved it to a personal account ("Account 5330"). On or about the date of separation, Account 2744 held $13,821.44.

The trial court awarded the marital residence (with a gross value of $94,555.00) to Clarenda and the rental property (with a gross value of $130,000) to Bruce. The trial court also awarded other assets with a gross value of $69,498.37 to Clarenda and a gross value of $107,890.38 to Bruce. The court further held Clarenda responsible for $71,988.36 in debt (including a mortgage of $6,321.04 and student loans of $56,686.54) and Bruce responsible for $47,406.22 (the amount of the mortgage on the rental home). Thus, of the net marital estate worth $282,549.17, the trial court awarded Clarenda 32.6 percent ($92,065.01) and Bruce 67.4 percent ($190,484.16). In support of its "Order of Property and Debt Distribution," the trial court stated the following in pertinent part:

> Both parties are employed. Petitioner earns $52,000.00 annually and Respondent approximately $106,000. During the course of the marriage, Respondent, while being a homemaker and working part-time, completed a pharmacy degree, acquired a license, and is now employed as a pharmacist. However, certain student loans acquired as a result thereof remain unpaid, those being Xpress Loan Servicing [totaling $56,686.54].

* * * *

4

The Court specifically finds that the deviation from the presumptive equal distribution . . . [is] just and reasonable given the significant difference in present income and future earnings potential of the parties, and the fact that this difference results directly from educational degrees and a professional license acquired wholly within the course of the marriage.

(App. 7).

Clarenda now appeals.

DISCUSSION AND DECISION

Clarenda contends that the trial court abused its discretion in deviating from the statutory presumption of an equal division of marital property. She argues that the trial court's findings are insufficient to support its order.

The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007). An abuse of discretion occurs if the trial court's decision "is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute." *Hatten v. Hatten*, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005), *trans. denied*. When a party challenges the trial court's division of marital property, she must overcome a strong presumption that the trial court considered and complied with the applicable statute. *Id*.

When we review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the trial court's disposition of the

5

property. *Id*. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id*.

An equal division of marital property is presumed to be just and reasonable, but this presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each spouse at the time of disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. Ind. Code § 31-15-7-5. When ordering an unequal division, the trial court must consider all of the factors set forth in the statute. *Eye v. Eye*, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). While a trial court abuses its discretion in considering a factor in isolation from the other four factors, the court is not required to explicitly address each factor. *Id*. at 702. However, a court on review must be able to infer from the trial court's findings that the all statutory factors were considered. *Id*. at 703.

Here, the trial court's order does not specifically refer to the first and third factors of the statute, and we cannot infer from the trial court's findings that the court considered these factors.[1] For example, Clarenda appears to have made significant contributions to the acquisition of marital property. Also Bruce is gainfully employed, is the owner of rental property that has produced income when well-managed, and is in no danger of

---

[1] The second factor—acquisition of property through gift or inheritance prior to the marriage—has no application to the facts and circumstances of this case. The facts may allow for a determination of dissipation (factor #4); however, the trial court makes no finding pertaining to such dissipation.

destitution. In addition, while Clarenda has a higher income, she also has been held responsible for payment of significant debt. Furthermore, while Clarenda benefitted from Bruce's support during the marriage, Bruce reaped the benefits of Clarenda's home management throughout the marriage and increased income during the years after she passed the boards and before Bruce filed the petition for dissolution of the marriage.

Not only do the trial court's findings fail to indicate that the court considered all of the relevant factors, the trial court also may have given undue consideration to the parties' income differential. Although Clarenda does now have a higher income than Bruce, it is not such a significantly higher income that it would necessarily justify a deviation from an equal division. The entire family benefitted from Clarenda's higher income while the parties were still married. Moreover, the trial court set aside a significant amount of debt – largely attributable to Clarenda's education which enabled her to make the higher income – to Clarenda.

These factors, if considered by the trial court, may have caused the court to order less of a deviation from presumed equal division of property. On the other hand, they may not have affected the court's ultimate determination. The bottom line is that we cannot discern from the trial court's order whether it considered relevant factors other than the disparity in the parties' income. In short, we must conclude that the trial court's order fails to consider all of the statutory factors pertinent under the facts and circumstances of this case, namely the contributions of the parties to the acquisition of marital property and the economic circumstances of the parties at the time of separation.

7

Accordingly, the court abused its discretion in deviating from the presumption of equal division of the marital property.

We reverse and remand with instructions that the trial court determine the distribution of the marital estate in accordance with the presumption of an equal division of marital property.

Reversed and remanded.

ROBB, C.J., and MAY, J., concur.