**Thomas C. BLOODGOOD, III, Appellant–Respondent,**

v.

**Patsy A. BLOODGOOD, Appellee–Petitioner.**

**No. 53A04–9608–CV–348.**

Court of Appeals of Indiana.

May 12, 1997.

Andrew C. Mallor, Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer, Bloomington, for Appellant–Respondent.

Susan H. Nelson, Robert T. Drew, Andrews, Harrell, Mann, Chapman & Coyne, Bloomington, for Appellee–Petitioner.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Respondent-Appellant Thomas C. Bloodgood III appeals the trial court's division of marital property and order to pay attorney

fees in a dissolution action filed by Petitioner–Appellee Patsy A. Bloodgood.

We affirm.

### ISSUES

Thomas raises two issues for our review, which we restate as:

    1. Whether the trial court erred in equally dividing the marital property.

    2. Whether the trial court erred in ordering Thomas to pay a portion of Patsy's attorney fees.

### FACTS AND PROCEDURAL HISTORY

Thomas and Patsy were married on November 14, 1959, and separated on March 29, 1995, when Patsy filed for dissolution of the marriage. At the time of the separation, both Thomas and Patsy were fifty-nine years old. All four of the children born of the marriage were emancipated.

Approximately a month before Patsy filed her petition for dissolution, Thomas's mother died.[1] He received his share of her estate in December of 1995. The share, in the amount of $349,833.25, was deposited in an account denominated as the "Hilliard Lyons Account."

During the course of the marriage, Thomas's parents transferred substantial property to him. This property, which was in the form of cash from bonds invested by Thomas's father, was intended by Thomas's parents to provide for their care in old age. Thus, although Thomas had a legal right to use the property, he did not do so. Furthermore, he did not commingle the gift with other marital assets. The property, in the amount of $423,508.09, was deposited in an account denominated as the "First of Michigan Account."

At the hearing on Patsy's petition, both Thomas and Patsy agreed that the inheritance deposited in the Hilliard Lyons Account and the gift deposited in the First of Michigan Account were to be treated as marital property. Patsy requested that the trial court equally divide the marital property.

Thomas requested that the Hilliard Lyons Account and the First of Michigan Account be set aside to him, and that the remainder of the marital property be equally divided. Thomas argued that the accounts should be set aside pursuant to Ind.Code 31–1–11.5–11(c) because the money in the accounts was kept separate from marital assets, was not used to pay marital expenses, and was not added to through contributions by Patsy.

At Thomas's request, the trial court entered special findings of fact and conclusions of law. In its findings, the trial court acknowledged that Thomas had received the gift and inheritance from his parents. The court found that Thomas had a college degree and worked as an engineer for $55,000 per year.[2] The court found that although Patsy had worked outside the home for a brief period during the thirty-six year marriage, she had not done so for several years prior to the separation. The court also found that Patsy's primary occupation during the marriage was as a homemaker. The court further found that Thomas and Patsy did not have to use the funds in the First of Michigan Account because they carefully followed a budget during the course of the marriage. The court concluded that the entire marital pot, including the funds in the Hilliard Lyons and First of Michigan Accounts, were to be equally divided. The court also concluded that Thomas should pay a portion of Patsy's legal fees.

Thomas now appeals.

### DISCUSSION AND DECISION

#### I. DIVISION OF PROPERTY

Thomas contends that the statutory presumption of an equal division of marital property was rebutted by evidence that (1) the deposits to the Hilliard Lyons and First of Michigan Accounts came from a gift and inheritance to him; (2) the money in the accounts was not commingled with marital assets; (3) the money in the accounts was not used to pay marital debts; and (4) the balance in the accounts was not increased by Patsy's contributions. Thus, he argues that

---

**1.** Thomas's father died in 1994.

**2.** At the hearing, Thomas testified that his salary was $58,000 per year.

the trial court abused its discretion in not deviating from an equal division by setting aside the Hilliard Lyons and First of Michigan Accounts to him.

Ind.Code 31–1–11.5–11 governs the division of marital assets in dissolution proceedings. The division of assets lies within the sound discretion of the trial court. *Norton v. Norton,* 573 N.E.2d 941, 943 (Ind.Ct. App.1991). We will reverse only if that discretion is abused. *Porter v. Porter,* 526 N.E.2d 219, 222 (Ind.Ct.App.1988), *reh'g. denied, trans. denied.* Reversal is appropriate when there is no rational basis for the award. *R.E.G. v. L.M.G.,* 571 N.E.2d 298, 300 (Ind. Ct.App.1991). There is no rational basis if the court's division of marital assets is clearly against the logic and effect of the facts and reasonable inferences to be drawn therefrom. *Id.* An abuse of discretion may also be found when the trial court has misinterpreted the law or has disregarded evidence of factors listed in Ind.Code 31–1–11.5–11. *Hodowal v. Hodowal,* 627 N.E.2d 869, 871 (Ind. Ct.App.1994), *trans. denied.* We presume that the trial court followed the law and considered the proper factors in making its determination. *R.E.G.,* 571 N.E.2d at 301.

We apply a two-tiered standard of review to special findings entered by the court upon the request of a party. First, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. *Fuehrer v. Fuehrer,* 651 N.E.2d 1171, 1173 (Ind.Ct.App. 1995), *trans. denied.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *reh'g. denied, trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* We neither reweigh the evidence nor reassess the credibility of witnesses in reviewing the trial court's division of marital assets. *Id.*

Ind.Code 31–1–11.5–11 provides that all marital property is to be divided and that the trial court shall presume that an equal division of the marital property is just and reasonable. The presumption that an equal division is just and reasonable may be rebutted by relevant evidence. Ind.Code 31–1– 11.5–11(c) provides that the presumption may be rebutted when a party introduces relevant evidence, including:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

In the present case, the trial court made findings pertaining to each of the factors listed in Ind.Code 31–1–11.5–11(c). The court acknowledged the existence of the gift and the inheritance. The court found that the account containing the money from the gift was kept separate from money used by Thomas and Patsy for payment of marital debts.[3] The court also found that the fifty-nine year old Patsy had little work experience, and it can be inferred from this finding that the court concluded that Patsy's age and lack of work experience militated against the procurement of a good paying job and improvement of her poor economic circumstances. The court further found that both Thomas and Patsy contributed to the acquisi-

---

**3.** The money from the inheritance was not distributed to Thomas until after he and Patsy separated.

tion of marital property and that neither dissipated marital assets. More specifically, the court found that use of funds received from Thomas's parents was not necessary as Thomas and Patsy adhered to a strict budget during the marriage.

■ The trial court's findings indicate that it weighed Patsy's· poor economic circumstances and limited earning capacity against the existence of the gift and inheritance and Thomas's superior earning capacity. The findings also indicate that the trial court weighed the length of the marriage, the age of the parties, and the parties' fiscal behavior during the marriage against the facts in favor of an unequal division of marital property. The court determined that the factors were in equal balance and that the statutory presumption was not rebutted. Accordingly, the court determined that an equal division of the marital assets was just and reasonable.

In reviewing the court's determination, we look to see whether or not the trial court "measure[d] each factor and the evidence adduced therefrom against the weight of the statutory presumption." *Cowden v. Cowden,* 661 N.E.2d 894, 896 (Ind.Ct.App.1996). We focus on "what the court did, not what it could have done." *Fiste v. Fiste,* 627 N.E.2d 1368, 1372 (Ind.Ct.App.1994). Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *McBride v. McBride,* 427 N.E.2d 1148, 1151 (Ind.Ct.App.1981).

As noted above, the court's findings indicate that it weighed the relevant evidence before making its determination. The court was not constrained to find that the receipt of the gift and inheritance outweighed evidence of Patsy's limited earning capacity and poor economic circumstances. While the evidence is sufficient to support a determination different than the one reached by the trial court, we cannot say that the evidence mandates such a determination. Furthermore, we cannot say that the determination reached by the trial court is clearly against the logic and effect of the facts and inferences before the court.

Thomas contends that we should reverse the trial court because it erroneously found that (1) Thomas used his inheritance to fund a trust which designated Patsy as a beneficiary, and (2) Thomas reported interest income from the First of Michigan Account as "joint income" on joint returns filed by the parties. It is true that the trust was funded by the gift money, not the inheritance money. It is also true that the inclusion of interest income on a joint return does not indicate that both parties signing the return had the right to receive the income. As discussed above, however, the court's determination is justified on the basis that factors indicating that an unequal division was warranted were offset by other relevant factors. We do not perceive the court's erroneous findings to be material to its determination that the equal division of marital assets was just and reasonable.

■ Thomas also argues that the trial court must be reversed because "it is unclear from the judgment whether the trial court divided the marital estate equally or not[.]" Appellant's Brief at 25. Our examination of the trial court's judgment reveals that it expressly provides in Section D for an equal division of Thomas's pension, the Hilliard Lyons Account (inheritance), and the First of Michigan Account (gift). The judgment further provides in Section D for division of other property and a lump sum payment by Thomas to Patsy which adds up to an award of approximately $741,565.00 to each party. This equal division, however, is cast into doubt by Paragraph 45 of Section D which gives reasons to justify "[t]he Court's failure or perceived failure to divide the marital estate 'equally.'" (R. 34). We note that after making the equal division of the marital property, the trial court ordered that Thomas pay any outstanding mortgage and obligations in his name and that Patsy pay any obligations in her name. The amounts of the mortgage (if any exists) and the obligations are not listed. We read Paragraph 45 as the trial court's acknowledgment that the payment of the mortgage and obligation may alter the equal awards to the parties. The parties, however, did not mention the debts in their joint stipulation or their separate "proposed" divisions. Accordingly, we con-

sider the debts to be de minimis. The trial court intended to, and did, make an equal division of the marital property.

Finally, Thomas argues that the trial court's determination is erroneous because it is contrary to cases which approve the setting aside of inherited property. *See Scott v. Scott,* 668 N.E.2d 691 (Ind.Ct.App.1996); *Keller v. Keller,* 639 N.E.2d 372 (Ind.Ct.App. 1994), *trans. denied; Castaneda v. Castaneda,* 615 N.E.2d 467 (Ind.Ct.App.1993)( all affirming the set aside of an inheritance to a party where the party had kept the inheritance in his or her name, the other party had made no contribution to the accumulation of the funds, and the funds were not commingled with other marital assets). We note that while these cases permit a trial court to award an inheritance to a party, they do not mandate an award. The key factor is whether the trial court correctly exercised its discretion. As discussed above, the trial court weighed the factors and determined that an equal division of marital property was just and reasonable. The trial court was within its discretion in doing so.

## II. ATTORNEY FEES

Thomas contends that the trial court erred in requiring him to pay a portion of Patsy's attorney fees. He argues that an award of attorney fees is improper when the court orders an equal division of marital property.

In dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney fees. Ind.Code 31–1–11.5–16(a). In awarding attorney fees, the court has broad discretion. *Meade v. Levett,* 671 N.E.2d 1172, 1178 (Ind.Ct.App.1996). We will reverse the trial court's decision only if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors which bear on the reasonableness of the award. *Id.* An award of attorney fees is proper when one party is in a superior position to pay the fees over the other the other party. *Reese v. Reese,* 671 N.E.2d 187, 192 (Ind.Ct.App. 1996).

In the present case, the evidence indicates that both Thomas and Patsy received equal and substantial marital assets. The evidence also indicates that a portion of the assets will not be paid until Thomas's future retirement. The evidence further indicates that Thomas will continue to earn approximately $58,000.00 per year, while Patsy will have a limited earning capacity. Considering the disparity in the parties' incomes, the trial court did not err in requiring Thomas to pay a portion of Patsy's fees.

### CONCLUSION

The trial court did not abuse its discretion in the manner in which it divided the marital estate. Furthermore, the trial court did not abuse its discretion in requiring Thomas to pay a portion of Patsy's attorney fees.

Affirmed.

DARDEN and HOFFMAN, JJ., concur.