**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 11 2013, 8:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID P. MURPHY**
David P. Murphy & Associates, P.C.
Greenfield, Indiana

ATTORNEY FOR APPELLEE:

**MARGARET LOIS JANSEN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANA L. SMITH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-DR-554 |
| | ) | |
| JAMES L. SMITH, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David L. Dreyer, Judge
The Honorable Patrick Murphy, Master Commissioner
Cause No. 49D10-1101-DR-2807

**July 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Dana L. Smith ("Wife") appeals the trial court's order denying her motion to correct error following the entry of a decree dissolving her marriage ("Decree") to James L. Smith ("Husband"). We address three issues on appeal:

1.    Whether the trial court's omission of Exhibit 1 to the Decree constitutes reversible error.

2.    Whether the trial court abused its discretion when it divided the marital estate in the Decree.

3.    Whether the trial court abused its discretion when it awarded attorney's fees to Wife.

We affirm, but remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on January 23, 2004. At the time of the marriage, Wife had a student loan and no assets aside from a car that Husband had purchased for her prior to the marriage. Husband had accumulated substantial assets before the marriage including a home in Indianapolis, a 2003 Silverado, a Yamaha XL 700 Jet Ski, a 1998 Sea Doo, a houseboat (with a $16,000 lien), a 401(k), a Putnam IRA, an American Funds IRA, a GM pension, a family endowment, and cash. Husband's only debt was the lien on the houseboat. Wife did not work during the marriage, but Husband worked at General Motors until his retirement in 2007.

In 2007, the Social Security Administration determined that Wife had become disabled as of December 2, 2003, shortly before the marriage.[1] Based on that determination, Wife received a lump sum Social Security Disability distribution in the

_____

[1] Wife's disability determination was based on her diagnoses for lumbar degenerative disc disease, fibromyalgia, arthritis in the right hip, migraine headaches, and bursitis in the right shoulder.

amount of $21,759. Wife used this money to purchase a washer and dryer, to pay expenses for her adult son from a prior marriage, and to buy sundry other items. Also during the marriage, Husband gave gifts to Wife. For example, he paid the difference between the trade-in price of the vehicle he had bought for her prior to the marriage and the purchase price of her 2005 Chevrolet Malibu. Husband also paid Wife's student loans, which were incurred prior to the marriage, and gave her more than $4,800 to use for the benefit of her adult son's legal expenses. Additionally, Husband paid all of the taxes and expenses necessary to maintain Wife's car, Husband's truck, the recreational vehicles, the home, and all other assets he owned prior to the marriage.

On January 24, 2011, Wife filed a petition for dissolution of marriage ("the Petition"). In the Petition, Wife requested an equitable distribution of assets that had accumulated during the marriage.[2] Subsequently the parties entered into a preliminary agreement that was approved by the court. Later, in September 2011, Husband agreed to pay Wife $2500 as a partial prejudgment distribution of the marital estate so that Wife could relocate to Florida. As a result, Husband's attorney prepared a modification of the parties' preliminary agreement and filed the same with the court. Wife then relocated to Florida, taking with her the Malibu, the washer and dryer, and other furnishings of her choosing from the home.

Of note, in November 2011, Wife filed a motion to amend the Petition in order to add requests for post-dissolution maintenance, attorney's fees, and funds for medical costs. And, in December, she filed a motion for an order requiring Husband to provide

---

[2] The Petition provides that "during their married life the Parties acquired personal property and other assets and Petitioner [Wife] is entitled to an equitable division thereof." Appellant's Brief at 24.

3

"suit money" and deposition expenses to allow Wife to pursue other legal proceedings. She also filed a motion for a protective order to prevent her from being ordered to produce her bank statements, but on the same date she mailed the same bank statements to Husband's attorney. Husband's counsel prepared a response to each filing. The trial court ultimately consolidated the motion to amend with the final hearing, struck the motion for a protective order, and denied the motion for suit money and deposition expenses.

After several continuances, the final hearing was held May 15, 2012, at which Wife withdrew her request for maintenance and for funds for additional medical expenses. At that time, Husband received $4,356 monthly from his GM pension, from which he paid his health care expenses, and Wife received $934 monthly in disability benefits and child support, and her health expenses are covered by Medicare. For the distribution of the marital estate, Wife requested $250,000 from Husband's 401(k) and $80,000 from his bank accounts, and she agreed to relinquish all claims to the survivorship and the life annuity related to the GM pension. Husband asked the court to divide only the increase in value in the marital estate that had accrued during the marriage, which, according to his valuations, would result in a total distribution to Wife of $55,432 (less the $2500 previously distributed for her relocation). At the close of evidence, the trial court took the matter under advisement. Wife had requested special findings, and the parties subsequently submitted proposed findings of fact and conclusions thereon.

On August 31, 2012, the trial court issued the Decree, which includes findings of

fact and conclusions thereon. The Decree provides, in relevant part:

29. The Debts of the Marriage at the time Wife filed the dissolution [petition] were minimal and Husband admitted evidence only of his debt for his tax filing for tax year 2010, which he paid as a single (married separate) filing on his own at $1,105.00 in 2011 (combined state and federal taxes due).

30. The marital residence is located at 8306 Ehlerbrook Road, Indianapolis, Indiana, Marion [County]. Said residence had no mortgage at the time the parties married in 2004[,] and Husband paid all maintenance, repair, taxes and insurance on the residence during the marriage.

31. Husband additionally submitted testimony and evidence that he owned accounts, investments, a truck, recreational vehicles and a houseboat, all owned prior to the marriage, which were paid for at the time of the marriage with the exception of a $16,000 lien on the houseboat.

32. Testimony was given that Husband worked after the parties married and retired sometime in [the Fall of] 2007. Wife did not work during the marriage.

33. Husband testified, prepared and submitted several exhibits, documenting his substantial prior [sic] owned property ([s]ome of said exhibits which were submitted by [Wife's] counsel). Husband also submitted into evidence a summary exhibit of the value of his Assets owned prior to the marriage.

34. Husband additionally submitted exhibits and evidence of the date of filing values of the same assets, some [of] which had dropped substantially in value due to economic circumstances (E.g. Husband's GM 401K) and others that had increased in value. (See summary exhibit—Husband's Marital balance sheet).

35. Wife did not dispute these values, with the exception of her vehicle, or offer contradictory evidence, but in fact submitted some of the exhibits provided by [Husband's] counsel prior to the hearing as courtesy by Husband's attorney, as exhibits of the Petitioner/Wife.

36. These exhibits[] submitted by both parties and the supporting documentary evidence showed that the increase in value during the six[-]year marriage was a net of [$110,864].

5

37.    Testimony also established that Wife had already requested and received the sum of $2,500.00 from Husband in September 2011 as an advance against any future cash settlement determined by the court, (See Modified Agreed Entry Modifying Preliminary approved September 8, 2011) and that Wife had personal property and furnishings in her possession (moved from Indiana) and her vehicle.

38.    Both parties stated that they had all of the real and personal property in their names and their possession, which they were requesting[,] and that they were not asking for a change in the current distribution or status of that property.

39.    Rather Wife was requesting cash settlement from Husband and/or also a transfer of a substantial amount of Husband's 401K, none of which was earned during the marriage.

40.    It was specifically stated in Wife's case by Wife and [her] counsel, that she was not requesting any part of Husband's pension from GM.

41.    The Husband currently occupies the marital residence, which he owned outright prior to the marriage and is in his sole name.

42.    Husband gave testimony and exhibits showing that during the marriage he paid out $3,998.00 to extinguish Wife's student loans, which Wife accumulated prior to the marriage.

43.    Husband additionally gave testimony and exhibits that during the marriage they paid out the sum of $4,842.00 from his income[] toward the expenses of Wife's adult son from a prior marriage.

44.    At the time of the filing of the Petition, the Parties owned a 2005 Chevrolet Malibu, which Husband bought and paid for during the marriage from the marital income.

45.    The Petitioner/Wife submitted evidence showing the Malibu was worth [$]5,535.00 (see Wife's Financial declaration), but testified that she based the value on the current mileage, which is a year and four months after the filing of the dissolution [petition].

46.    That Husband submitted evidence showing the Malibu was worth $7,725.00 based on the features and mileage at the time of filing in January 2011, and testified that he was familiar with the vehicle, which he serviced

6

during the marriage. He testified that both his and Wife's vehicles were assessed as in excellent condition.

* * *

CONCLUSIONS OF LAW

* * *

4. The Respondent/Husband has met his burden under [Indiana Code Section] 31-15-7-5 and has shown under [Indiana Code Section] 31-15-7-5(2)(a) that primarily all of the assets held at the date of filing were owned by him <u>prior</u> to the marriage, and were a result of Husband's income and effort as an unmarried person prior to this marriage.

5. That under [Indiana Code Section] 31-15-7-5(1) Husband has shown that his contribution during the marriage[] to those assets owned prior to the marriage was substantially the only contribution to the maintenance and any increase in the value of those assets in existence at the time of filing of the dissolution [petition] by Wife.

6. That under [Indiana Code Section] 31-15-7-5(4) Husband has shown that Wife's income (Disability income and lump sum payment in 2007) she received during the marriage was primarily used for minor personal property, now in Wife's possession, or was otherwise dissipated for non-marital purposes.

7. That Wife, by her own choice, did not use her income or contribute to the joint marital purposes or any increase in or maintenance of the assets.

8. That additionally Husband expended almost Nine Thousand Dollars of his GM income earned during the marriage, for debts that Wife brought into the marriage, and also on Wife's adult son from a prior marriage, due to criminal and other problems.

9. That the marriage [was] relatively brief and that there were no children of the marriage.

10. That the total increase in assets during the period of the marriage[] is the sum of [$110,864].

11. That most of this increase in total assets is due to an increase in Husband's pension with GM, which was exhibited [sic] by the evaluations done by Dan Andrews.

7

12.     The marital property shall be unequally distributed, pursuant to Indiana Code [Section] 31-15-7-5, which is not disputed by either party.

13.     The marital property is to be distributed as summarized in Exhibit 1, attached and incorporated by reference into this Order.

14.     That Wife's attorney by exhibit showed a balance or net expense (after payment by Wife) of Wife's attorney [f]ees, by Affidavit, of $3,324.76.

15.     That Husband incurred expenses for having to respond to the multiple and often unnecessary filings by Wife's counsel, primarily those filed between November 9, 2011[,] and December 10, 2011.

16.     That these multiple filings required response by Respondent's counsel and unnecessary expense to Husband.   That Husband's [r]esponsive pleadings requested attorney fees and to some extent this should offset any attorney fees award to Wife.

17.     The Respondent/Husband shall retain all of his property, real and personal, in his sole name and shall be responsible for any liabilities or debts on that property holding the Petitioner/Wife harmless on those debts and liabilities.   That husband shall retain all his bank accounts and investments, subject to any offset or cash settlement by this court as Ordered.

18.     The Petitioner/Wife shall retain all of her personal property, and her bank account in her sole name or currently in her possession, including her 2005 Chevrolet Malibu, and shall be responsible for any liabilities or debts on that property holding the Respondent/Husband harmless on those debts and liabilities.

* * *

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1.     That the Petition for Dissolution is granted;

2.     That the Petitioner/Wife is restored her maiden name of Patterson;

3.     That the Marital Property owned by the Parties is divided as provided in Exhibit 1, which is incorporated herein by reference.

8

4.      That Wife is hereby Ordered to sign all documents and anything else required and to cooperate in every way[] in waiving or returning assignment of all her rights to the survivorship portion related to Husband's pension with General Motors.

5.      The Respondent/Husband shall pay to Wife the sum of [$43,264.00] in full settlement of all remaining rights and obligations of this marriage. . . .

* * *

8.      That both parties are to assume all debts in the respective names and all liabilities of their separate assets, holding the other party harmless on said debts.

9.      That Husband shall pay to Petitioner's counsel on behalf of petitioner/Wife the sum of [$1,500.00] within ninety (90) days of the decree of dissolution.

Appellant's App.[3] at 11-18 (emphases in original).  The trial court adopted Husband's proposed findings and equally divided only the increase in the marital estate's value that accrued during the marriage.  Wife filed a motion to correct error, which the trial court denied.  Wife now appeals.

## DISCUSSION AND DECISION[4]

### Standard of Review

In response to Wife's request, the Decree contains findings of fact and conclusions thereon.  In reviewing such an order, our standard of review is well-settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment.  In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no

---

[3] All citations to the Appellant's Appendix are to the sequential handwritten numbers.

[4] Wife contends that the trial court abused its discretion when it denied her motion to correct error and that it abused its discretion when it entered the Decree.  Because Wife raises the same issues regarding the Decree and the order denying the motion to correct error and because our standard of review is abuse of discretion for both, we address them together.

evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Thalheimer v. Halum, 973 N.E.2d 1145, 1149-50 (Ind. Ct. App. 2012) (quoting McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), trans. denied). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[5] Ind. Trial Rule 52(A).

### Issue One: Omitted Exhibit

We first consider Wife's contention that the Decree must be reversed because the trial court did not attach an exhibit. The exhibit at issue was incorporated by reference into the Decree and described the division of marital property. After receiving a copy of the Decree, Wife asked trial court staff about the missing exhibit, but court personnel could not find a copy in the court's records. Husband also apprised the court that he was

---

[5] Wife points out that the "Decree is a complete adoption of [Husband's] proposed Findings and Conclusions, without deviation." Appellant's Brief at 10. But our supreme court has commented:

It is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority for our trial bench. For this reason, we do not prohibit the practice of adopting a party's proposed findings.

Pruitt v. State, 903 N.E.2d 899, 903-04 (Ind. 2009) (internal quotation marks and citation omitted).

10

missing Exhibit 1 and told the trial court that the same exhibit had been attached to his proposed findings of fact and conclusions thereon. On appeal Husband states that court personnel promised to send a copy of the exhibit to counsel's office, but there is no indication in the record that the trial court forwarded copies of Exhibit 1 to either party. Wife raised the omission of Exhibit 1 from the Decree as an issue in her motion to correct error, which the trial court denied.

Wife argues that the Decree should be reversed because "[n]othing in the record establishes what the Court meant in the Decree as [sic] 'Exhibit 1[.]'" Appellant's Brief at 20. She maintains further, and without elaboration, that, because the exhibit was "[n]ever formally admitted into evidence, and therefore [was] unavailable for [her] review and rebuttal," the omission of Exhibit 1 affects her "substantial rights." Id. at 21. We cannot agree with either point.

An exhibit to a trial court's order need not have been admitted into evidence in order to be a binding part of the court's order. Instead, an exhibit incorporated by reference is merely part of a decree or other court order. Further, Wife ignores the other references in the Decree that describe how the parties were to divide the property. Specifically, the Decree ordered the parties to: (1) retain the property that each owned individually prior to the marriage; (2) pay their own separate debts and hold the other party harmless therefrom; and (3) divide equally the increase in value of the marital estate that occurred over the course of the marriage by Husband's payment to Wife of $43,264.

The Decree adequately informed the parties of the distribution of property ordered. Indeed, the Decree contained enough detail of the distribution ordered to allow Wife to

challenge the division of marital property on appeal. As such, Wife has not shown that the omission of Exhibit 1 from the Decree is reversible error or affected her substantial rights, and any error by the trial court arising from the omission of Exhibit 1 from the Decree is harmless. See Ind. Appellate Rule 66(A). Nevertheless, for clarity, we remand for the trial court to add the exhibit nunc pro tunc and to redistribute the Decree to the parties.

**Issue Two: Division of Marital Estate**

Wife next contends that the trial court abused its discretion when it divided the marital estate. In particular, she maintains that the trial court improperly considered factors not listed in the statute, disregarded uncontroverted evidence, and ultimately divided the marital property in an unjust and unreasonable manner. We address each contention in turn.

Marital property is defined as all property owned by the parties whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right

    (A) after the marriage; and

    (B) before final separation of the parties; or

(3) acquired by their joint efforts.

Ind. Code § 31-15-7-4(a). The court "shall divide the [marital] property in a just and reasonable manner[.]" Ind. Code § 31-15-7-4(b). Indiana Code Section 31-15-7-5, governs the distribution of marital property. That statute provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may

12

be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

> (A) before the marriage; or

> (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

> (A) a final division of property; and

> (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5.

The division of marital assets is within the dissolution court's discretion, and we will reverse only for an abuse of discretion. Hardebeck v. Hardebeck, 917 N.E.2d 694, 699-700 (Ind. Ct. App. 2009). We have described that standard of review in such cases as follows:

> The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. Woods v. Woods, 788 N.E.2d 897, 900 (Ind. Ct. App. 2003). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. Daugherty v. Daugherty, 816 N.E.2d 1180, 1187 (Ind. Ct. App. 2004). When we review

13

> a challenge to the trial court's division of marital property, we may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of marital property. Woods, 788 N.E.2d at 900. Moreover, the challenger must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. Id.

J.M. v. N.M., 844 N.E.2d 590, 602 (Ind. Ct. App. 2006), trans. denied.

We first consider Wife's contentions that the trial court considered factors not listed in Indiana Code Section 31-15-7-5. Specifically, she argues that the trial court should not have considered the length of the parties' marriage or the anticipated decrease in Husband's pension income when dividing the marital estate.[6] We cannot agree.

Wife asserts on appeal that consideration of the length of the marriage in determining the division of marital property is "not established by decisional authority" in this state. Wife is incorrect. Courts have often considered the length of the marriage as one factor in determining the just and reasonable division of marital property. See McGrath v. McGrath, 948 N.E.2d 1185, 1188 (Ind. Ct. App. 2011) (no abuse of discretion in division of real property where trial court considered the length of the marriage, the facts that the parties' joint marital income was used to purchase the property, and that the property was titled jointly); Webb v. Schleutker, 891 N.E.2d 1144, 1166 n.6 (Ind. Ct. App. 2008) (no abuse of discretion where trial court considered length of marriage in equally dividing marital pot, which included personal injury settlement the husband brought into the marriage); Bloodgood v. Bloodgood, 679 N.E.2d 953, 958 (Ind. Ct. App. 1997) (affirming equal distribution of marital pot after considering length of

---

[6] Wife also contests the conclusion of law that "there were no children of the marriage," but she makes no argument on that point, and thus, waives that issue. See App. R. 46(A)(8)(a).

marriage among other factors). Wife's argument that a trial court may not consider the length of the marriage in determining the division of marital property is without merit.

Again, Indiana Code Section 31-15-7-5 provides that a party may rebut the presumption that an equal division of marital property is just and reasonable by presenting evidence, "including evidence concerning" the listed factors. In other words, the statute does not provide an exhaustive list of factors the court must consider. Rather, the factors listed there are the minimum the court must consider when determining the division of marital property. A trial court does not abuse its discretion when it considers factors not listed in the statute that are nevertheless relevant in determining a just and reasonable division of the marital estate.

Wife also takes issue with the trial court's Finding 25, which provides that Husband's monthly pension payment will decrease beginning in May 2014. Wife refers to this as a finding regarding "future anticipated losses to [Husband's] fortune." Appellant's Brief at 16. But that finding pertains to Husband's monthly income, a required factor to be considered under Section 31-15-7-5(5), not the value of marital assets. And Wife has not shown that the trial court relied heavily, if at all, on this finding. As such, Wife's argument that the trial court improperly made this finding and relied on it in dividing the marital property must fail.

We next consider Wife's contention that the trial court "disregarded uncontroverted facts in the record concerning the contributions of [Wife] to the marriage[.]" Appellant's Brief at 11. In particular, Wife first challenges "Finding 39" which, she says, states that she "did not contribute to the marital estate." Id. at 13 (citing

15

Appellant's App. at 13). But Finding 39 does not make such a sweeping statement. Instead, it states merely that Wife "was requesting cash settlement from Husband and/or also a transfer of a substantial amount of Husband's [401(k)], none of which was earned during the marriage." Appellant's App. at 13. Wife does not elaborate further and, thus, fails to provide cogent reasoning to support her contention. As such, her argument regarding Finding 39 is waived. See Ind. Appellate Rule 46(A)(8)(a).

Wife next challenges Finding 19, in which the trial court found that, when Wife received $21,759 as a lump sum disability payment during the marriage, the funds

> were not used by Wife to pay for or maintain any of the marital assets or pay for the parties' living expenses, but were used to purchase a washer and dryer and other personal property (which Wife has possession of now) and that the remainder was substantially used to assist her adult son from a prior marriage regarding a criminal case he was being prosecuted for.

Id. at 10. Wife appropriately ties this to Conclusion 7, which states "[t]hat Wife, by her own choice, did not use her income or contribute to the joint marital purposes or any increase in or maintenance of the assets." Id. at 16. Wife contends that Finding 19 and Conclusion 7 "are directly in conflict" with this court's reasoning in Hatten v. Hatten, 825 N.E.2d 791, 796 (Ind. Ct. App. 2005), aff'd on reh'g, trans. denied, in which we held that the trial court abused its discretion when it awarded a brokerage account to the husband, without an equal distribution to the wife, based on the finding that the brokerage account was maintained "separate and distinct" from the rest of the marital property. However, that court further held that substantial funds from the brokerage account were used for the parties' "mutual benefit." Id. Here, in contrast, Husband did not add Wife to the title of any of his property, nor has Wife shown that Husband used any of his

16

accounts for the benefit of the marriage. As such, Hatten is inapposite. Wife has not shown that this finding is unsupported by the evidence or that the findings fail to support the related conclusion.

Wife further contends that the trial court based its division of property in part on fault. In support, she points to Finding 20 (finding that Wife's son from a prior marriage served prison time), Finding 21 (that Wife's marriage to Husband was her fifth marriage), and Finding 22 (Wife's current cohabitation with someone in Florida). In support Wife cites R.E.G. v. L.M.G., 571 N.E.2d 298, 301 (Ind. Ct. App. 1991), for the proposition that courts "will not tolerate the injection of fault into modern dissolution proceedings." Wife misapplies that quote. The court in R.E.G. was referring to fault as the basis for granting a dissolution of marriage. Further, that court noted that the dissolution statutes specifically provide that the conduct of the parties as it relates to the disposition or dissipation of property may be considered in determining the distribution of marital property in dissolution proceedings. Id.

Such was the case here. The trial court found that Wife spent marital money and part of her disability lump sum payment on her adult son from a prior marriage. The court found and concluded that, as such, Wife dissipated these funds for non-marital purposes. Wife does not challenge that finding. And with regard to the findings about the number of Wife's prior marriages and her current living arrangements, there is no indication in the Decree that the trial court considered those findings to ascribe fault to Wife or based its distribution of assets on those findings. As such, Wife's argument with regard to these findings must fail.

17

Finally, Wife contends that the "value of the property set over to [Husband] compared to the value of the property set over to [Wife] is so grossly unequal as to be neither just nor reasonable." Appellant's Brief at 14. But the trial court made findings regarding each of the factors in Section 31-15-7-5: the contribution of each spouse to the acquisition of property, the extent to which the property was owned by either party before the marriage, the economic circumstances of each spouse, the conduct of the parties as related to the disposition of property or dissipation, and the earnings or earning ability of each spouse. Considering each of these findings, and in light of the relatively short duration of the marriage and the parties' relative contributions to marital assets during the marriage, the trial court determined that a just and reasonable distribution would be achieved by setting over to each party the property owned prior to the marriage and dividing only the increase in value of the entire marital pot that accrued during the marriage.

"[W]here assets were acquired prior to marriage, the trial court may achieve a just and reasonable property division by determining the appreciation over the course of the marriage of such assets and dividing the appreciation between the spouses, while setting over to the appropriate spouse the pre-marriage value of the assets at issue." Doyle v. Doyle, 756 N.E.2d 576, 579 (Ind. Ct. App. 2001). And there is a strong presumption that the trial court complied with the statute and considered evidence of the statutory factors. Id. at 578. Wife has not overcome that presumption here. Her arguments amount to a request that we reweigh the evidence, which we cannot do. J.M., 844 N.E.2d at 602.

18

Wife has not shown that the trial court abused its discretion when it equally distributed only the increase in value of the marital estate that accrued during the parties' marriage.

**Issue Three: Attorney's Fees**

Finally, Wife contends that the trial court's award of attorney's fees in the Decree is not reasonable. Indiana Code Section 31-15-10-1 provides that a "court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending" any proceeding under the dissolution of marriage article. The legislative purpose of this statute is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. Maxwell v. Maxwell, 850 N.E.2d 969, 975 (Ind. Ct. App. 2006), trans. denied. We review a trial court's award of attorney's fees in connection with a dissolution decree for an abuse of discretion. Hartley v. Hartley, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). Factors to consider in making an award of attorney fees include the parties' relative resources, ability to engage in gainful employment, and ability to earn an adequate income. Maxwell, 850 N.E.2d at 975.

Here, in the Decree, the trial court found and concluded, in relevant part, as follows:

> 11. Wife filed a Motion for Leave to Amend her Petition For Dissolution on or about November 9, 2011[,] by certified mail, approximately nine and a half months after her original filing for dissolution, requesting the additional relief of maintenance and attorney fees, neither of which were requested in her original Petition for Dissolution filed January 24, 2011. Hearing on Wife's Petition For Leave to Amend was set for May 15, 2012, the final hearing date.
>
> 12. On May 15, 2012, [Wife's] counsel, on behalf of Wife, indicated on the record that she was no longer requesting maintenance due to the fact

19

that her health status had not in fact changed and that the Petition for Leave to Amend had been dropped, except as it might pertain to attorney fees.

13.    Respondent/Husband was required to respond to that Motion at Husband's expense, which he did on or about November 21, 2011.

14.    That on or about December 8, 2011[,] wife filed a Motion for Protective Order, which Husband was also required to respond to at his own expense.  Husband requested fees for responding to that Motion due to the fact that Wife on approximately the same date as her Filing for Protective Order, produced the items she had stated she could not produce and should be protected from being required to produce . . . .

15.    That Wife had additionally filed on or about December 8, 2011[,] several other filings, including a Motion for Suit Fees to finance a medical case and depose experts, which was subsequently denied and later shown to be unnecessary.  Husband additionally responded to that Motion at his expense.

16.    The total fee for Dan Andrews's evaluation [of Husband's GM pension] was Five Hundred and Twenty[-]Five Dollars ($525.00) to assess the value and also the coverture fractions of both Husband's pension with [G]eneral Motors and Wife's Survivorship benefit, which were separate assets at the time of filing due to the fact that the pension was in pay status.  Husband paid that evaluation [sic] fee.

17.    It is the understanding of the parties that survivorship can be assigned back to the GM pension by the Wife, and Wife indicated on the record that she was agreeable to do so.

* * *

47.    Evidence was submitted by Petitioner/Wife of attorney fees in the sum of [$3,824.76], minus a payment by Wife of Five Hundred Dollars on January 24, 2011[,] for a net of [$]3,324.76.

48.    Husband submitted evidence of fees expended by him, for work on his behalf in response to the multiple filings of Petitioner's [Wife's] counsel beginning on November 9, 2011, which included several pleadings by Petitioner that were denied or later dropped by Petitioner as unnecessary or unfounded.

49.    That among those filings by Wife's counsel was a Motion for Protective Order that was Denied.  Respondent's response filed with this

20

court was supported by a letter (exhibit) contemporaneously sent by Wife's own attorney, stating he had enclosed the documents he purported to protect Wife from producing in discovery, in his own Motion for Protective Order.

50.     That these multiple filings required response by Respondent's counsel and expense to Husband.   That Husband's several responsive pleadings to Wife's Motions[] requested attorney fees.   That Husband requested that these offset any attorney fees award at the court's discretion.

51.     There was additional testimony that Husband's counsel had drafted the agreed preliminary for the parties and also the modified preliminary when Wife expressed to Husband her desire to relocate to Florida.

CONCLUSIONS OF LAW

* * *

14.     That Wife's attorney by exhibit showed a balance or net expense (after payment by Wife) of Wife's attorney Fees, by Affidavit, of $3,324.76.

15.     That Husband incurred expenses for having to respond to the multiple and often unnecessary filings by Wife's counsel, primarily those filed between November 9, 2011[,] and December 10, 2011.

16.     That these multiple filings required response by Respondent's counsel and unnecessary expense to Husband.  That Husband's responsive pleadings requested attorney fees to some extent this should offset any attorney fees award to Wife.

* * *

IT IS THEREFORE ORDRED, ADJUDGED, AND DECREED:

* * *

5.     The Respondent/Husband shall pay to Wife the sum of [$43,264.00] in full settlement of all remaining rights and obligations of this marriage. That Husband shall pay one[-]half[] within thirty (30) days of this Decree. That the remaining one[-]half (1/2) shall be paid to Wife no later than Ninety (90) Days of this Order.

* * *

21

9. That Husband shall pay to Petitioner's counsel on behalf of Petitioner/Wife the sum of [$1,500.00] within ninety (90) days of the decree of dissolution.

8-9, 14-18.

In support of her argument that the fee award is unreasonable, Wife argues that she is a "pauper existing solely on an award of Social Security Disability Benefits and has no income or property with which to pay her attorney." Appellant's Brief at 17. We acknowledge Wife's status as disabled and the amount of her disability income, but Wife completely ignores the $43,264 cash settlement awarded to her in the Decree. Wife further argues that the

efforts of her attorney to protect her rights were reasonable and professionally necessary. During Dissolution proceedings, [Wife] received one diagnosis of Parkinson's Diseases[sic], which Counsel was ethically bound to raise on her behalf. Thankfully, that diagnosis was later reversed[. T]hat, however, did not eradicate Counsel's responsibility at the time to address it in the marital estate division.

Id. Wife states that the trial court's findings 11-15 and 49-50 and Conclusions 14-16 "criticized" her attorney's filings. Appellant's Brief at 17. But Wife points to no evidence to show that those findings are not supported by the evidence or that the listed conclusions are not supported by the findings. To the extent Wife's argument amounts to a request that we reweigh the evidence, we will not do so. See J.M., 844 N.E.2d at 602. And to the extent Wife argues that the trial court failed to consider relevant factors in determining the fee award, the record and the Decree do not support that contention. Wife has not shown that the trial court abused its discretion when it awarded her $1500 for attorney's fees.

22

## Conclusion

The trial court failed to include with the Decree Exhibit 1, which is incorporated into the Decree by reference. Given the description of the distribution of property included in the Decree, Wife has not shown that omission to constitute reversible error. Nevertheless, we remand with instructions for the trial court to make a nunc pro tunc entry, adding the Exhibit to the Decree and reissuing the same to the parties.

Wife contends, in effect, that the trial court should have given greater weight to her disability and that her disability supersedes other relevant factors. We conclude, however, that her disability is only one factor to be considered. Wife has not shown that the trial court abused its discretion when it set over to the respective parties the property each owned prior to the marriage and then equally divided the increase in the entire marital estate that accrued during the marriage. Wife also has not shown that the trial court abused its discretion when it did not award her the entire amount of attorney's fees that she requested. The trial court's division of property is not clearly against the logic and effect of the facts and circumstances before the court and is not clearly erroneous. As such, we affirm the Decree.

Affirmed and remanded with instructions.

BAILEY, J., and BARNES, J., concur.

23